1  CRISTINA BALAN (Pro Se)
2  4698 Arbors Circle
   Mukilteo, WA-98275
3  425-205-0200
4  cbalan.j2019@gmail.com

FILED #99 pd np

JAN 25 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

CV 19 0449 DMR

CASE NO. _____

CRISTINA BALAN,

          Plaintiff(s),

v.

TESLA MOTORS INC,

          Defendant(s).

**NOTICE OF PETITION AND PETITION TO MODIFY AND PARITALLY VACATE THE ARBITRATION AWARD**

Arbitration Award Date:
October 18, 2018

[Filed concurrently with: Memorandum of points and authorities]

BY FAX
ONE LEGAL LLC

NOTICE OF PETITION AND PETITION TO MODIFY AND
PARITALLY VACATE THE ARBITRATION AWARD                                - 1 -

# NOTICE OF PETITION AND PETITION TO MODIFY AND PARITALLY VACATE THE ARBITRATION AWARD

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on _____, 2019, at _____, or as soon thereafter as the matter may be heard in Department ____ of the above-entitled Court, located at 450 Golden Gate Avenue, San Francisco, California 94102, Petitioner Cristina Balan will petition the Court to modify and partially Vacate the Arbitration Award

Petitioner seeks to modify and partially vacate the arbitration award issued in Cristina Balan v Tesla Motors INC, Case No.: 1100080567, on the grounds that the Arbitrator James L. Warren' (9 U.S.C. §10 and §11) award exceeded his powers, by issuing an award in manifest disregard of the law; the award was procured by corruption, fraud, or undue means and there was evident partiality or corruption in the arbitrator. The decision on the arbitrator was Arbitrary and Capricious conveying a notion to abuse the possession of power.

This petition will be based on this notice of petition and petition, the concurrently filed memorandum of points and authorities, the exhibits, the written and oral evidence as may be presented at the time of the hearing, and upon all other matters as the Court may take judicial notice of and which the Court deems appropriate.

Respectfully submitted,

DATED: January 25, 2019          CRISTINA BALAN

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

1. This petition will illustrate how corrupted this arbitration proceeding was from day 1 and how Arbitrator Warren decisions were commented by fraud, willfulness representation, corruption of the arbitrator and discovery process, including corruption of the expert and violation of multiple administrator rules and state and federal laws.

2. The evidence offered at arbitration tried to demonstrate that Respondent Tesla Motors, Inc. ("Tesla") misclassified Balan as an exempt employee during two separate periods of employment she had with them (which she won), retaliated against her and then wrongfully terminated her (which she lost). As a non-exempt, hourly employee, Balan was entitled to receive more than $683,000 in unpaid overtime, meal and rest premiums, and accrued interest.

3. The arbitration was concluded when Arbitrator Warrner deducted $560,000 from Balan final award because of her "rolling her eyes" and "explosively crossing her arms" while Tesla's witnesses were giving false testimony. (Exhibit A: Final Award -Corrected)

4. Arbitrator Warner specifically committed multiple acts of corruption. These acts included and not limited by accepting a critical Tesla IT expert, with whom he had a conflict of interest and willfully failed to disclose it as the law require.

5. While Tesla was subject to the authority of arbitrator Warren, clear and convincing evidence indicated that Tesla was the ringleader of the acts giving rise to this motion; the lion share of this document will illustrate behaviors from Tesla and include without limitation intimidation of an officer of the court and concealing evidence that later the defendant mistakenly produced a portion of.

6. Tesla's vindictive and dictatorial approach towards everyone who does not obey their will, persuaded even Ms Balan first attorney to commit corruption, fraud and breach of trust which including without limitation colluding with Tesla and agreeing to limit the discovery to a scope of their own choosing and shrouded from the arbitrator's view as per indirect Tesla's statements which is still to be determinate

7. Tesla thrive on intimidation and Arbitrator Warren help them.

## II. FACTUAL BACKGROUND

### 1. ARBITRATION CHAIN OF EVENTS:

8. Between August 15, 2010 to January 18, 2013 Ms Balan was an important part of Battery Team at Tesla, 3 months later asked to come back and rehired again on June 15, 2013 to April 16, 2014 when she was force to sign her resignation, under duress.

9. On December 2014 Balan hired her first lawyer Noah Lebowitz; soon after he sent the intent to sue letter to Tesla, explaining the situation.

10. January 2015 Tesla's lawyer Yusuf Mohamed sends his first letter to Balan's lawyer asking for a conference call. First thing they've requested was Balan recordings on when she was threatened.

11. March 31, 2015, after 3 months of back and forth, in which Balan asked for two critical and most important things for her: first- to know if Elon Musk knew what happened, and second- the emails of Balan's last three weeks of her first employment. Balan's lawyer received an email from Tesla's legal counselor that shocked her and make her decide to enter arbitration, according to which Tesla position on the critical time period was:

> "As I've previously told you in our phone conversation, the emails for that period of time do not exist in Ms. Balan's account. The reason that they were not restored for her during her employment was because the backup from that *two-week period of time was corrupted*, not just for your client, but *for the entire company*."

12. On April 1, 2015 Ms Balan entered in arbitrations with Tesla after she confirmed with several ex colleagues that her emails and her colleagues' emails are in their possession without any corruptions or missing emails.

13. On May 21, 2015 Ms. Balan finds out for the first time that her lawyer and Tesla chose the arbitrator James L. Warren. Balan was never involved in the selection of the arbitrator.

14. On June 22, 2015, the first case management order took place and beside many other rules and schedule the parties had until September 19, 2015 to close production od documents and a hearing schedule on July 1, 2016.

15. On August 18, 2015 Tesla produced first sent of documents 540 pages

NOTICE OF PETITION AND PETITION TO MODIFY AND
PARITALLY VACATE THE ARBITRATION AWARD                                    - 4 -

16.     On September 10, 2015 Tesla is asking for an extension to produce the documents to October 9, 2015 and announced that they refuse to produce the internal findings of an investigation Sr Legal Counselor Steven Cooper, was asked to perform and for which with Ms Balan claimed was retailed against. As consequence the arbitrator reminded Tesla that they are losing their rights to defend or talk about this investigation.

17.     On October 13, 2015 the arbitrator agreed with Tesla's motion to compel Balan to produce the recordings she made as she was retailed against for exposing critical issues of the entire design group.

18.     On January 29, 2016 after 4 months of arguing about the emails that Balan requested and after showing proof that other emails existed and delaying the discovery process without any consent from Balan, Tesla admits they didn't pull the right PST file and promise to comply with the productions of documents.

19.     On April 13, 2016, Tesla produced 10,000 pages of documents, after they delayed the process by another 3 month, by producing several more sets of emails, every time saying that was ALL they have on their possession, each time after Balan was threating to hire a third-party forensic investigator to look into Tesla' email server.

20.     Tesla did not produce any work emails from the period of time that Balan worked even more than 120 hours per week as well as her team during 2010 and 2011, saying they don't exist, while they produce exclusively emails requesting time out of office, doctor appointments or coming late emails from that time. Tesla still didn't produce any work emails from Balan's last two weeks of her first employment, to date.

21.     April 15, 2016 Balan told her lawyer she was approached by WSJ and accepted to have an interview about her stint and Tesla and her struggle, but also about her disappearing emails, especially the ones she sent to Elon Musk; and asked him to be present as the interview.

22.     April 27, 2016 after 9 months Tesla miraculously produced an email that Balan sent to Elon Musk Tesla's CEO; that's after Balan gave her lawyer an ultimatum that she wants a forensic investigator in Tesla immediately and she want to make a motion for it. Balan asked for the original email as well not just the pdf and after Balan looking on the code of the first email

she realized Elon Musk forward her email to a HR Director 7 minutes after he received it. Balan request the forward email as it was critical for her legal battle, as for her emotional one as well. Tesla never produced the second email from Musk.

23. May 10, 2016 Balan lawyer and Tesla had a case management order with the Arbitrator to ask for a licensed forensic company to investigate Tesla's backup tapes and request the Elon Musk emails as well, because Balan strongly believe Tesla was tempering with evidence, but the Arbitrator's response was again in favor of Tesla's request. Arbitrator stated.

> (a) "Tesla's Production of Claimant's emails: Counsel for Tesla indicated that the company has produced all emails in its custody, possession or control that were sent to and received by Claimant."

The arbitrator continues that instead of what Ms Balan asked her lawyer to do which was a motion to allow a forensic company he:

> (b) "ORDERED to produce a declaration, under penalty of perjury by a person with personal Knowledge, confirming that Tesla has in fact produced all such emails, and explaining why certain emails, otherwise know or believed to exist, would not have kept by Tesla"

After the arbitrator order the declaration, he moved to the next subject the Emails sent my Ms Balan to Elon Musk stated:

> (c) "Those emails have apparently now been products. It appears, however, that Mr. Musk forwarded one of those emails to a third party, and counsel for Ms. Balan seeks production of that email. Such an email is not within the scope of existing discovery request, however, so the request to have that email produced in, on this record, DENIED"

24. Immediately after reading this Balan had a series of phone calls and emails conversations with her lawyer demanding to go back to the arbitrator and correct those statements, she did not received both the sent and received emails, only some of sent emails as she was told by her lawyer that this was the arbitrator's decision, which was obvious not true, and to correct the fact she received only one of Musk's emails. Her lawyer refused.

25. May 13, 2016 Ms Balan ended her legal relationship with her lawyer and start being represented by Mr Yosef Perez

26. Immediately after Mr Perez tried to explain and request the arbitrator the missing and important emails that he believes are still in Tesla's possession during 2010 and 2011 as

quite a few chains of emails show, they existed. The arbitrator didn't agree and prohibited Perez to bring that subject again.

27. Depositions and subpoenas started and a hearing was scheduled for June 26, 2017

28. Between May 2016 and May 2017, after many depositions and discussions between Balan's lawyer and Tesla, Tesla produced more than 1,000 pages of documents from the backup they already stated that they produced everything. Still no received or sent work emails from 2010 to 2011 time period or the last two weeks of Balan's first employment which were critical to Balan's success her misclassification and wrongful termination claim.

29. June 9, 2017 Tesla offered Balan a settlement of $430,000. Balan refused.

30. June 19, 2017, seven days before the hearing when the last paperwork's were exchange, somehow 27 emails were produced from the "corrupt" backup for the entire company.

31. June 26, 2017 the hearing started and one of the key discussions was the motion of Balan attorney to allow the recordings as evidence as they show critical and disturbing events to what really happened with Balan and her termination,

32. One other motion was a request for punitive damages against Tesla for tampering with evidence regarding the two weeks of emails that the Sr. legal counselor of Tesla lied, the IT manager lied and in the end the IT Expert declaration under penalty of perjury, done on May 2016 along with his deposition were in question now.

33. After the first 3 hours of hearing, in which were discuss a number of motions and unresolved issues, Tesla requested a continuance to allow them to depose Balan for her PTSD diagnosis and entertain a second settlement offer of $600,000 and Balan accepted. The hearing stopped. A couple of weeks later Tesla changed their mind on their settlement offer.

34. July 6, 2017 Tesla sent a letter to the arbitrator and to Mr Perez trying to explain what happened and how those emails appeared, by stating that Mr Hernaez, Tesla's attorney, had a "deal" with Ms Balan's first lawyer, behind her back and without her knowledge, and agreed to give Ms. Balan Only the sent emails not both sent and received emails, as the arbitrator ordered, and they both agreed to do as such, as described on Paragraph 23 to 25.

35. July 18, 2017, Mr Perez sent back a reply regarding the email issue. Requesting the arbitrator to penalize Tesla and ask for immediately punitive damages and order Tesla to produce all the emails they didn't. Nothing happened.

36. October 2017, Tesla was allow to depose Ms Balan for PTSD diagnosis and treatment she was receiving, caused by the events that happened in the end of her employment.

37. December 18, 2017 to January 6, 2018 the arbitration hearing took place

38. After the hearing Tesla requested a delay in preparing their brief. It was accepted.

39. May 21, 2018 the Interim Award was sent. Balan won the misclassification and was awarded Only 18% of the conservative amount she asked, and she received $123,000. She lost both wrongful terminations. The gender discrimination and retaliation claims were lost because, per Arbitrator's decision, her lawyer decided to drop them and not discuss them in the brief (without her knowledge, even if they were discussed in the hearing).

40. June 22, 2018 after Balan, for the first time, used Twitter to share her story at Tesla, Tesla sent an angry unsolicited letter to the arbitrator asking him to allow them to publish "a redacted" part of the award to "set the record straight" about who prevailed.

41. June 23, 2018 Balan lawyer replied.

The arbitrator didn't comment about this issue.

42. August 20, 2018 the lawyers' fees and cost were discussed for both parties.

43. October 17, 2018 the final award was issued.

44. October 18, 2018 after corrected another final award was issued

45. October 29, 2018 Tesla issued a check for all the fees and cost ordered and agreed in the award, after Mr Perez and Tesla's attorney Alex Hernaez conferred, without Balan's knowledge.

46. November 15, 2018 Mr. Perez sent Ms Balan $107,000, the amount left after he deducted all his costs and share of the award.

## 2. **FACTS showing arbitrator's and arbitration process corruption**

47. One of the complaints Balan had through her employment and through this arbitration was the fact she was misclassified and that she should be paid for her monstrous amount of overtime she was asked to do, which she won.

48. Her shock was to see the arbitrator's corrupt, arbitrary and capricious decision on the amount she should receive for this clear claim she had.

49. As shown on the arbitration chain of events, Tesla tried to hide numerous times the emails that could have proven Balan' story. Tesla produced more then 7 sets of documents and every time they declared is ALL they had, but the biggest chunk was produced when she asked her lawyer to make a motion to bring a neutral 3rd party forensic analyst to investigate Tesla's backup server. On that point Tesla produced 10,000 pages of documents, but again nothing on the part that wound have help Balan to win her first termination and to show clearly the amount of unpaid worked time due to this misclassification.

50. On May 10, 2016 The arbitrator instead of accepting a neutral expert, what Ms Balan's lawyer asked for, he:

> "ORDERED to produce a declaration, under penalty of perjury by a person with personal Knowledge, confirming that Tesla has in fact produced all such emails, and explaining why certain emails, otherwise know or believed to exist, would not have kept by Tesla"

51. During the hearing the arbitrator stated that if Tesla cannot explain how those emails appeared "there will be consequences for that". Which they should have been. Tampering with evidence is not something that should be overlooked. As per hearing transcripts:

> "THE ARBITRATOR: See what you can come up with. I have seen situations where emails vanish somewhere and then suddenly reappeared again. That needs to be explained
>
> "MR. PERETZ: Especially because this is no email from a period that nobody -- no one has issues with."
>
> "THE ARBITRATOR: Okay. Those, you should have gotten. If there was some reason why they couldn't be obtained earlier -- let's assume that Mr. Peretz's understanding is correct, that these were produced for the first time now -- there will be consequences for that"

NOTICE OF PETITION AND PETITION TO MODIFY AND
PARITALLY VACATE THE ARBITRATION AWARD - 9 -

52. Even with the clear evidence presented to the arbitrator no immediate penalty was administrated to Tesla and the arbitration follow its course until the second hearing started, which brought up to the light something very strange, shocking and illegal:

53. On December 20, 2017, during the testimony of Tesla IT Expert, Mr Petry, the arbitrator admitted the Tesla's expert knows her daughter. This was illegal, under California law is the general duty to disclose "all matters that could cause a person aware of the facts to reasonably entertain a doubt that the proposed neutral arbitrator would be able to be impartial" California CCP § 1281.9(a); CRC Ethics Standards, Standard 7(d)(15)(A); he should have done that 18 months before, when he received the declaration under perjury of Mr Petry on May 2016;

> THE ARBITRATOR: Could a human being go in and create that hole intentionally?
>
> THE WITNESS: In a mailbox, yes; in a backup, no.
>
> THE ARBITRATOR: Would the backup defeat a human being's effort to try to create that hole?
>
> THE WITNESS: It would not.[..] let's say you back up your computer yourself every Friday. You go home this weekend -- a backup ran last Friday. The next scheduled backup is scheduled to run this Friday. You go home tonight. Your daughter sits down on your computer, plays around, deletes something
>
> THE ARBITRATOR: You know my daughter, huh?
>
> THE WITNESS: I do know your daughter.

And they continue to investigate why the emails appeared without explanation and how someone can indeed "cherry-pick" emails and leave what they feel like it and they conclude the answer was yes.

> THE ARBITRATOR: Or somebody could do the reverse? Somebody could go in, leave all of the junk in there and take the important stuff out for whatever reason.
>
> THE WITNESS: Absolutely

54. What makes Ms Balan question the integrity and the corruption of the arbitrator was the fact he dedicated an entire section on "Attorneys' Time Spent on Discovery Battles".

In his Final Award, Arbitrator Warrner stated the following critical findings and made it very clear that tesla tempered with critical evidence, he even paid Balan's lawyer for it, but don't punish Tesla for anything they did and he did not award Balan the amount she should received

> "A bizarre and as yet not satisfactorily explained discovery glitch cropped up several times during discovery, namely, the existence of Balan's emails. When Balan was re-hired by Tesla in June 2013, Tesla was unable to produce numerous emails of hers dated between January 1-18, 2013.
>
> Tesla's excuse was that some sort of company-wide technical glitch had occurred that destroyed the backup for the entire plant's emails during this period. Tesla produced Geoffrey Petry to explain this situation, first by declaration during discovery and then in person during the hearing.
>
> Tesla's position was made more difficult by the fact that, barely a few weeks before the hearing, Tesla unexplainedly produced several dozens of Balan's emails that had been written during the "corruption" period.
>
> Balan's counsel had to expend several dozen otherwise unnecessary hours to obtain both discovery about these "lost" emails, including a motion to compel and wasted hearing testimony trying to understand from Mr. Petry what had happened to them."

"The costs for Petry depositions are allowed in their entirety"

56. The arbitrator continues and stated his position on how critical those emails were for Ms Balan to won the correct amount for misclassification and also from Balan point of view to win her first termination, because that last week' emails would had shown how all her work assignments were sent back to her and everything got back to normal, as before her resignation.

> "These emails were potentially relevant both to Balan's misclassification claim itself, as well as to the related but equally important issue of how many uncompensated hours Balan had worked as a misclassified employee. Balan's counsel will be compensated for their work in trying to get Tesla to disgorge these relevant emails.
>
> At the Hearing, Petry could only testify that "I honestly don't know where these come from. I honestly don't know.""
> "All of this initial testimony was discredited as the Hearing progressed."

57. As you can see in here how clear he agrees of the illegalities that Tesla committed and still he did not issue any type of punishment for this in any punitive damages.

58. On the other hand, Arbitrator Warren found that Ms Balan should be not be credible even if he never had any type of evidence of any exaggeration that Ms Balan made and

takes the decision to punish Balan, saying that

"by the Arbitrator's ability to watch Balan's facial expressions and physical demeanor as she testified (or as she watched other witnesses testify) during the Hearing. **The rolling eyes, the diffident body postures, the negative or positive shaking of the head, the scowling, the explosive crossing of her arms and** similar such conduct are all relevant to the Arbitrator's consideration of the weight he gives to the evidence in this case. **The Arbitator incorporates this finding into the entirety of this Award**"

59. As far as for Balan second employment claims, the wrongful termination and retaliation, the arbitrator not even looked on the facts and evidence of the case that were presented and took for granted everything that Tesla stated in their brief, in many cases without even looking on the date on the emails that would have proved Tesla was lying.

### III.   ARGUMENT

What are the main illegal key elements in this arbitration?

60. Relevant and material evidence was concealed, withheld, and otherwise not made available to Balan so she can present the truth of what really happened

61. An arbitrator admission that those material evidence where critical for Balan's success to prove her hours and the amount she was entitle to

62. A declaration under perjury who was ignored

63. An admission of discredited testimony

64. A Legal counselor who lies about a global company back-up "glitch"

65. A mistake on providing emails from a period that none should have existed.

66. An arbitrator who forgot to mention a connection, a friendship with a main IT expert of one-party

67. A lawyer how breach his client trust by making deals behind her back to please the opposing party and lie to the arbitrator.

68. A second lawyer to breach her trust by hiding a "Sua Sponte" decision that Ms Balan was not aware for almost a year, until after the arbitration closed; which holds the most important piece of information for her well-being, an information for which she refused multiple settlements offers.

69. Now after all the above, we have the arbitrator findings on credibility of Balan which he "incorporates this finding into the entirety of this Award" and punish Balan for:

   a. **"roller her eyes"** --

   b. **"explosively cross her arms"** --

   c. **exaggerates** what she did for Tesla, but without any facts of that is true, beside Tesla's testimony and their brief.

70. Not only that, but she is getting punished for not just by denying most of her claims, but also by removing 82% of what she won: the misclassification claim, because she dares to do what all the Women around the world do: roll my eyes and explosively cross my arms.

71. If something like this award is permitted to happen in the American Judicial System that means 99.9% of women, we are without a fair justice system, because all of us we do what Ms Balan was punished for.

72. If this will become a prejudice than who knows, someone can get away with rape, because during the proceedings the opposite party dare to roll her eyes and cross her arms and maybe who knows we will all be punished for even crossing our legs soon.

73. If we try for a moment and take both Tesla's illegalities and their disrespect of the law, and the arbitrator finding on Balan, and we put them on a balance we can see how partially and corrupt the arbitrator and the entire arbitration process was, and how clear was the error of judgment, not based upon consideration of relevant factors and more as arbitrary, capricious, an abuse of discretion and power or otherwise not in accordance with law. The decision was taken without observance of procedure required by law.

74. The Ninth Circuit interprets this provision as authorizing courts to vacate an arbitrator's award when the award exhibits a "manifest disregard of law." *Comedy Club, Inc.*, 553 F.3d at 1290-93 (vacating an award where the arbitrator, while cognizant of the applicable law, nevertheless erroneously interpreted it in a way as to make it inapplicable to the facts at issue);

75. An arbitrator is under a continuing duty to disclose any interest or bias at any stage of the arbitration proceeding. The failure to disclose a substantial interest, as the arbitrator disclosed at the hearing that he knows Tesla IT Expert creates an impression of bias, which, if proved, may be sufficient to vacate an award.

76. Section 10(a)(4) of the FAA permits a district court to vacate an arbitration award where "the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made." 9 U.S.C. § 10(a)(4)

76. Another ground To partially vacate an arbitration award , "it must be clear from the record that the arbitrators recognized the applicable law and then ignored it." *Lagstein*, 607 F.3d at 641; *see also, T.Co Metals, LLC v. Dempsey Pipe & Supply*, Inc., 592 F.3d 329, 339 (2d Cir. 2010)

"[W]e look to a subjective element, that is, the knowledge actually possessed by the arbitrators. In order to intentionally disregard the law, the arbitrator must have known of its existence, and its applicability to the problem before him."

Ms Balan believed it is exactly what happen here after the arbitrator recognize the illegalizes that Tesla committed, but never punish them for.

### IV. CONCLUSION

Ms Balan was denied the fundamentally fair arbitration hearing to which she was entitled, and to which Tesla it feel, that has to get anytime, a preferential treatment, no matter of the circumstances or facts. They are known how vindictive they are, but Ms. Balan strongly believes this is a place they should have unlimited privileges.

The only thing Balan hoped for when she entered in this arbitration, was a fair chance to present her facts and have Honor to have access to the correctitude of the American Judicial System, one of the best in the world.

"Federal law favoring arbitration is not a license to tilt the arbitration process in favor of the party with more bargaining power."] Cf. *Chavarria v. Ralphs Grocery Co.*, 733 F.3d 916, 927 (9th Cir. 2013), which is Ms Balan opinion it is what happened here and the reason why Tesla impose arbitration in the first place.

For the foregoing reasons, the Court should not confirm, but should instead:

A. Modify the amount for the claim that Ms Balan won, misclassification, and award her with the full amount she requested.

B. Punish Tesla for what was already concluded, lying under oath and tampering with evidence by an amount your Honor feels it should make Tesla think next time when they are planning to do anything like they did here, even if they will be in arbitration and not in front of a jury, they are laws to respect.

C. To Partially vacate the award on all the other claims that Ms Balan lost, especially for the first wrongful termination for which Tesla withhold evidence, for which even the arbitrator agrees upon, and allow her the opportunity and the chance to a fair and legal judgment in court so she can present all the evidence she has.

D. Respectfully request an expedited partially vacatur and modification of the award for the claims that were presented

Dated: January 25, 2019                    Respectfully submitted, pro se,

                                           by: s/ Cristina Balan (plaintiff)